UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY JOE NESPOR,<br><br>Defendant. | CR. 18-50014-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Jeffrey Joe Nespor, appearing *pro se,* filed a motion for compassionate release.  (Docket 69).  Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions, and briefing on Mr. Nespor's motion. (Dockets 71 through 73, 79, 81, 84, 88).  For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(l)(A), in the wake of the spread of

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

the COVID-19 virus into the federal prison system.   (SO 20-06 at p. 1).   Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act."  Id. ¶ 1.   The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already.   These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"  Id. at p. 2 ¶ 4.   Those categories are:

a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

  d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the Court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant.[2] Id. ¶¶ 6-8.

## MR. NESPOR'S CLASSIFICATION

On August 10, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Nespor's case as an Intermediate Priority case. (Docket 70).

## FACTUAL BACKGROUND

On November 19, 2018, Mr. Nespor was sentenced to a term of imprisonment of 240 months for conspiracy to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). (Docket 59). Mr. Nespor agreed the amount of drugs attributable to his conduct was at least 15 kilograms but less than 45 kilograms of methamphetamine. (Docket 55, ¶ 13). Mr. Nespor was an organizer and leader in the drug trafficking activity and admitted hiring and paying others to transport methamphetamine from Colorado to the Rapid City

---

[2]SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

area.  Id. ¶¶ 10-11.  Mr. Nespor received methamphetamine in pound quantities and distributed it to intermediaries who then sold the methamphetamine to numerous users.  Id.

The presentence report ("PSR") calculated Mr. Nespor's total offense level as 37 and a criminal history category of I, resulting in a guideline imprisonment range of 210 months to 262 months.  Id. ¶ 81.  A mandatory minimum term of 20 years applied to Mr. Nespor because the government certified a single prior conviction for a felony drug offense under 21 U.S.C. § 851.  (Docket 27, Docket 55, ¶ 39).  Mr. Nespor was sentenced to the statutory minimum term.  (Docket 59).  The Court later reduced Mr. Nespor's sentence to 120 months.  (Docket 68).

Mr. Nespor is currently an inmate at the Forrest City Low Federal Correctional Institution ("FCI"), a low security facility with an adjacent minimum-security camp, in Forrest City, Arkansas.  See https://www.bop.gov.locations/institutions/for/ (last checked Dec. 31, 2020). The total inmate population at Forrest City Low FCI is 1623 persons.  Id.  As of January 12, 2021, there were 55 active COVID-19 cases between inmates and staff, no deaths, and 731 inmates and staff had recovered at Forrest City Low FCI.  See https://www.bop/gov/coronavirus/ (last checked Jan. 13, 2021).

Mr. Nespor's scheduled release date is August 23, 2026, and under his current status in the BOP his home detention eligibility date is February 23,

2026. (Docket 72 at pp. 94-95). As of this date, Mr. Nespor has served about 30.3 percent of his sentence. See Docket 71 at p. 263. Mr. Nespor is 57 years old. (Docket 69 at p. 2).

## MR. NESPOR'S MOTION

Mr. Nespor's *pro se* motion seeks compassionate release for extraordinary and compelling reasons based on his age and personal health conditions coupled with the COVID-19 pandemic, and he argues the reduction of the mandatory minimum sentence applicable to his offense from 20 years to 15 years also warrants relief. Id. at pp. 1-2. Mr. Nespor alleges he has several conditions that place him at greater risk for a serious illness if he contracts COVID-19, including a body mass index (BMI) greater than 35, high blood pressure (hypertension) for which he takes hydrochlorothiazide, and borderline diabetes which is controlled by diet. Id. In a supplement to the *pro se* motion, defense counsel argues it is his age, weight and high blood pressure that place Mr. Nespor at a higher risk of developing serious complications if he contracts COVID-19. (Docket 79 at pp. 5, 11-17).

Mr. Nespor's medical records confirm the following current medical conditions:

- Major depressive disorder. (Docket 71 at pp. 1-2);
- Anxiety. Id.;

- Essential (primary) hypertension.  Id.[3]

As of July 23, 2020, Mr. Nespor was prescribed buspirone (30 MG twice daily) for anxiety and hydrochlorothiazide (one-half of 12.5 MG tablet daily) for hypertension.  (Docket 72 at p. 1).

On May 2, 2020, as part of a mass screening, Mr. Nespor was tested for COVID-19.  (Docket 72 at pp. 11, 75-77).  Results of the test received on May 5, 2020, were positive for the virus.  Id. at p. 77.  Thereafter, Mr. Nespor was quarantined and received regular screenings of his symptoms from May 6, 2020, to June 1, 2020.  Id. at pp. 44-45.  His medical records reflect an asymptomatic course of the illness, and the condition resolved on or about May 26, 2020.  Id. at 7.

In addition to and coupled with his age and medical conditions, Mr. Nespor argues that a change in the mandatory minimum statutory sentence, which was enacted after his sentencing, constitutes an extraordinary and compelling reason for a sentence reduction.  (Docket 69 at p. 2; Docket 79 at pp. 23-25).  The First Step Act of 2018, to which Mr. Nespor refers, reduced the mandatory minimum sentence for persons with a qualifying single prior conviction for a felony drug offense from 20 years to 15 years of imprisonment.  See Pub. L. No. 115-391,

---

[3]The medical records further reflect conditions of vertigo, sinusitis, retained dental root, cellulitis, sicca syndrome and olecranon bursitis. (Docket 71 at pp. 1-2).  The court does not consider these conditions to be relevant in the analysis.

6

§ 401(a)(2)(A)(i), 132 Stat. 5194, 5220 (2018).  The amendment to the penalties for controlled substance offenses set out in 21 U.S.C. § 841(b)(1) became effective as of December 21, 2018, approximately one month after Mr. Nespor was sentenced.  See id. § 401(c).

According to Mr. Nespor, he is a low-level, non-violent offender with a minimum risk of recidivism and does not pose a risk or danger to the community.  (Docket 69 at p. 2).  In the supplement filed by counsel, Mr. Nespor advises his release plan is to reside in Mitchell, South Dakota, in a house owned by one of his sons.  (Docket 79 at p. 25).  He represents that he is employable and has several skills that will enable him to procure work, specifically with his son's construction business.  Id.

## UNITED STATES' OPPOSITION

The government opposes Mr. Nespor's motion for compassionate release.  (Docket 84).  First, the government argues Mr. Nespor's motion should be denied because he already tested positive for COVID-19 and the condition has resolved.  Id. at p. 2.  The government analogizes Mr. Nespor's situation to that of the defendant in United States v. Terrell Brunston, Case No. 4:18-cr-40145 (D.S.D. May 26, 2020).  Id.  The government argues Mr. Brunston was denied compassionate release because he tested positive for COVID-19 but was asymptomatic.  Id.

Second, the government argues denial is also warranted because Mr. Nespor's medical conditions, obesity and hypertension are not extraordinary

and compelling reasons to warrant release. (Docket 84 at pp. 8-11). The government claims Mr. Nespor has not been diagnosed with obesity and hypertension is a medical condition that *might* increase a person's risk of severe illness from COVID-19 as identified by the Centers for Disease Control and Prevention ("CDC"). Id.

Third, the government contends Mr. Nespor's age does not support release under either Application Note 1(A)(ii)(III) or Note 1(B) of U.S.S.G. § 1B1.13. Id. at pp. 11-12. Application Note 1(A)(ii)(III) pertains to a defendant who is "experiencing deteriorating physical or mental health because of the aging process" that substantially diminishes his ability to provide self-care within the correctional facility. U.S.S.G. § 1B1.13, comment. (n. 1(A(ii)(III)). Application Note 1(B) provides that a defendant who is at least 65 years old and "is experiencing a serious deterioration in physical or mental health because of the aging process" may be considered for release if the defendant has served at least 10 years or 75percent of his term of imprisonment. U.S.S.G. § 1B1.13, comment. (n. 1(B)). The government points out Mr. Nespor has not reached the age of 65, there is no evidence he is experiencing a serious deterioration in his physical or mental health as a result of the aging process, and he has not demonstrated his medical conditions substantially diminish his ability to provide self-care within the correctional facility. (Docket 84 at pp. 11-12).

Fourth, the government contends Mr. Nespor's arguments for compassionate release fair no better under the catch-all provision of U.S.S.G. § 1B1.13, Application Note 1(D).  Id. at pp. 12-19.

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting Mr. Nespor compassionate release.  Id. at p. 19.  The government submits Mr. Nespor "would pose a danger to public safety if released" based on his history of continued narcotics activity.  Id.  Because this was a serious crime and Mr. Nespor has at this point served only about 30 percent of his current sentence, the government further contends release would not be in keeping with the sentence imposed.  Id. at p. 20.

## ANALYSIS

### **Administrative Exhaustion**

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Nespor exhausted the administrative relief provision contemplated by § 3582(c)(1)(A).  Mr. Nespor submitted a request for compassionate release to the warden of FCI Forrest City Low on June 30, 2020, but apparently did not receive a response.  (Docket 73).  The 30-day period contemplated by § 3582(c)(1)(A) began to run from the date Mr. Nespor's request was received by the warden.  At the latest, the 30-day period for a response by the warden lapsed on July 30, 2020.  Mr. Nespor's motion for relief was filed in this court on August 6, 2020.  Mr. Nespor completed the administrative process contemplated by the statute, and his motion is subject to review on the merits.

**Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020).  That task was left to the United States Sentencing Commission.  "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories of extraordinary and compelling reasons for sentence reduction as

directed by Congress. Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 comment. (n.1). The four categories have not been updated since December 2018 when the First Step Act became law.[4]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[5] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed

---

[4]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

[5]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at p. 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 2020 WL 6813995, at *2 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 2020 WL 7050097, at *8 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL

12

6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same).   The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Nespor relies on his age, obesity and high blood pressure as conditions warranting compassionate release in the face of the COVID-19 pandemic.   (Docket 79 at 5).   Despite the expanded authority under the First Step Act, the court finds Mr. Nespor has not met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).   Based on the court's detailed review of the medical records, Mr. Nespor's age, obesity and hypertension are not extraordinary and compelling reasons warranting compassionate release.

Mr. Nespor is 57 years old. The CDC recognizes the risk of severe illness as a result of COVID-19 increases with age with older adults at higher risk. See Older Adults, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last checked Jan. 5, 2021).   A person aged 50-64 is four times more likely to require hospitalization than a person under the age of 29.   Id.

The CDC indicates adults of any age *are* at increased risk of severe illness from COVID-19 if they have certain conditions, including a BMI of 30 or higher.   See People with Certain Medical Conditions, Centers for Disease

13

Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). Though Mr. Nespor's medical records do not reflect a diagnosis of obesity, the records support he has a qualifying body mass index ("BMI"). Mr. Nespor is 71 inches tall. (Docket 55 at p. 2). His most recent recorded weight was 246 pounds on August 19, 2019. (Docket 71 at pp. 71-72). This results in a BMI of 34.3, which is considered obese. See Adult BMI Calculator, Centers for Disease Control and Prevention, /assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last checked Jan. 5, 2021). Mr. Nespor also has high blood pressure or hypertension. Hypertension is identified by the CDC as a condition that *might* increase the risk of severe illness as result of COVID-19. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). Mr. Nespor's hypertension is treated with medication and has been considered stable by his medical providers. (Docket 71 at pp. 3, 75-79).

The combination of Mr. Nespor's age, obesity and hypertension give the court pause that Mr. Nespor is or might be at higher risk of a severe illness from COVID-19. In May 2020, however, Mr. Nespor tested positive for COVID-19 and remained asymptomatic throughout its course. (Docket 71 at pp. 9, 13, 22-23). More recently, in August 2020, Mr. Nespor was suspected of

14

having COVID-19 after reportedly having a fever, although a rapid result test indicated he was negative for the virus. (Docket 81 at pp. 20-21). Mr. Nespor was still quarantined for 12 days and monitored for symptoms. Id. at pp. 8-9, 23-25. His follow-up exam on August 24, 2020, indicated he had a probable case of COVID-19 with mild symptoms that had resolved. Id. at 9. He was discharged from isolation. Id.

A strikingly similar factual case is that of Unites States v. Lavatai, CR. NO. 13-00021-2, 2020 WL 4275258 (D. Haw. July 24, 2020). The defendant in Lavatai also suffered from obesity and hypertension and had an asymptomatic course of COVID-19 while housed at FCI Lompoc. Id. at *1. The defendant was also serving a sentence for conspiracy to distribute methamphetamine for which a mandatory minimum 20 years imprisonment applied. Id. Though recognizing that obesity and hypertension increase the risk of severe illness from COVID-19, the court concluded those risks were mitigated by defendant's prior asymptomatic course of the condition. Id. at *3. The court explained "[t]his court is in no position to make a definitive determination about immunity, but the combination of [defendant's] lack of complications after testing positive and the possibility that he may have some form of immunity cannot be entirely ignored in any evaluation" of extraordinary and compelling reasons. Id. The motion for compassionate release was denied. Id.

Similarly this court is persuaded that Mr. Nespor's prior asymptomatic course after a positive COVID-19 test in May 2020 and mild symptoms after a probable diagnosis of COVID-19 (despite a negative rapid test result) in August 2020 cannot be ignored in evaluating whether extraordinary and compelling reasons warrant a reduction in his sentence. From the court's review of the medical records, Mr. Nespor appears generally healthy. Apart from the COVID-19 testing and monitoring, most of his recent medical visits in 2020 have been related to sinus infection, dizziness and increased anxiety, which resulted in an increased dosage of buspirone. (Docket 81 at pp. 6-7, 10-11, 15; Docket 72 at pp. 1-5; Docket 81 at pp. 1-2). Furthermore, based on the records before the court and Mr. Nespor's prior experiences, it appears that Forrest City Low is equipped to appropriately respond if Mr. Nespor were to contract the virus. The court does not diminish Mr. Nespor's health concerns. Nor does it deny the possibility Mr. Nespor could contract the COVID-19 virus again in the future. Nevertheless, his medical conditions of obesity and hypertension coupled with his age of 57 are not extraordinary and compelling reasons warranting release in the face of the COVID-19 pandemic.

Were the court to find Mr. Nespor's medical conditions constitute extraordinary and compelling circumstances during this pandemic, the court must still consider whether compassionate release comports with the § 3553(a) factors. These include "the nature and circumstances of the offense and the history and characteristics of the defendant," among others. 18 U.S.C.

§ 3553(a).  "[T]he history and characteristics of the defendant" require the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S. 81, 113 (1996).

In Mr. Nespor's case, the nature and circumstances of his offense are serious.  Mr. Nespor was involved in the distribution of large amounts of methamphetamine that he brought, and had others bring, to the Rapid City area from Colorado.  He was considered an organizer and leader in the operation.  Mr. Nespor's drug trafficking occurred despite his having previously served a sentence of 132 months incarceration for a prior federal felony drug offense.  (Docket 27-1 at p. 2).  Mr. Nespor was approximately 33 years old when convicted of the first federal drug offense.  (Docket 55, ¶ 39).  He was approximately 43 years old when released from incarceration on July 24, 2006.  Id.  The instant offense commenced no later than August 1, 2016, when Mr. Nespor was approximately 53 years old, and continued to February 1, 2018, when he was arrested.  Id. ¶¶ 2-5.

The court further notes Mr. Nespor has a temperament that tends to get him in trouble.  He was convicted of simple assault after hitting a co-worker in the face on September 1, 2009.  Id. ¶ 40.  He was arrested several times for domestic assault in 2010 and 2017.  Id. ¶¶ 48-51.  Several domestic abuse protection orders have been issued against Mr. Nespor, and there is currently a protection order in place that does not expire until July 1, 2021.  Id. ¶¶ 52-55.

The government contends "[d]efendant's history of continued narcotics activity is a danger to the community."  (Docket 84 at p. 19).  Mr. Nespor argues that "[a]t age 57, having tested positive for COVID-19 and suffering from obesity and hypertension Nespor simply does not any longer pose the danger he once did when convicted."  (Docket 88 at p. 7).  The court cannot agree with Mr. Nespor.

Mr. Nespor was of a mature age when he engaged in the instant drug trafficking offense, and he is not much older now (age 57) than he was when arrested (age 55).  Furthermore, Mr. Nespor does not explain why his obesity and hypertension render him less dangerous, nor does the court find the argument compelling.  At the time of his presentence investigation interview, Mr. Nespor disclosed he had high blood pressure for which he was taking medication.  (Docket 55, ¶ 66).  Additionally, his weight at that time was 230 pounds, about 16 pounds less than he is currently.  Id. ¶ 65.  Nothing has significantly changed in Mr. Nespor's medical conditions that would indicate he is no longer a risk or danger to the community because of these conditions.

Finally, Mr. Nespor argues the reduction of the statutory minimum sentence from 20 years to 15 years is an extraordinary and compelling reason warranting compassionate release.  (Docket 79 at p. 1).  The First Step Act's amendment to the controlled substance offense penalties were not made retroactive to persons sentenced before the effective date of December 21, 2018.  See Pub. L. No. 115-391, § 401(c), 132 Stat. at 5221.  Nevertheless,

18

the need to avoid unwarranted sentence disparities is a factor the court may consider along with other factors under 18 U.S.C. § 3553(a).

Here, regardless of the then existing 20-year statutory minimum, the guideline range for the offense to which Mr. Nespor pleaded guilty was 210 to 262 months.  (Docket 55, ¶ 81).  Mr. Nespor therefore was not guaranteed a sentence of 15 years (180 months).  The ultimate sentence of 120 months is a significant reduction from the calculated advisory guideline range.  It is furthermore well below the now-existing minimum statutory sentence of 15 years (180 months).  To date, Mr. Nespor has served less than half of his sentence and is not scheduled for release until August 23, 2026.  (Docket 71 at p. 263).

The court carefully reviewed the submissions by Mr. Nespor in support of his motion for compassionate release and considered the factors set forth in § 3553(a) and the policy statements issued by the Sentencing Commission to the extent they are applicable.  Mr. Nespor has not demonstrated "extraordinary and compelling reasons" warranting a reduction in his sentence.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 69) is denied.

Dated January 26, 2021.

                                        BY THE COURT:

                                      /s/ *Jeffrey L. Viken*
                                      JEFFREY L. VIKEN
                                      UNITED STATES DISTRICT JUDGE